RANDY S. GROSSMAN
Acting United States Attorney
JOSEPH S. GREEN
Assistant U.S. Attorney
California State Bar No. 251169
ALEXANDRA F. FOSTER
Assistant United States Attorney
Washington, D.C. Bar No. 470096
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 546-6955/6735
Email: joseph.green@usdoj.gov/alexandra.foster@usdoj.gov
Attorneys for the United States

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>   v.<br><br>RUBEN ANDRE GARCIA (3),<br><br>   Defendant. | Case No. 19CR4488-JLS<br><br>GOVERNMENT'S SENTENCING MEMORANDUM |
|---|---|

The United States of America, by and through its counsel, Randy S. Grossman, Acting United States Attorney, and Joseph S. Green and Alexandra F. Foster, Assistant United States Attorneys, hereby submits its Sentencing Memorandum.

I.   STATEMENT OF FACTS

Defendant Ruben Andre Garcia was one of the leaders of a conspiracy to recruit young women to appear in sex videos for adult websites using force, fraud, and coercion.

1

From approximately 2013 to 2017, Defendant worked as a recruiter, producer, and actor for the websites girlsdoporn.com (GDP) and girlsdotoys.com (GDT). As a part of a premeditated scheme, Defendant recruited victims to appear in sex videos for the websites by promising them that these videos would never be posted on-line, that they would never be released in the United States, and that no one who knew the women would ever find out about the videos. Throughout the scheme, Defendant knew these representations were false.  Defendant knew the entire videos were being posted on the fee-based websites, GDP and GDT, and excerpts were posted on free pornographic sites like Pornhub.com, one of the most frequently viewed websites in the world receiving millions of views, to drive paying viewers to GDP and GDT.

Defendant and co-Defendant Michael Pratt were the lead recruiters for GDP and GDT.  Their target market was 18 to 20-year-old women.  They created craigslist advertisements, fake websites and email addresses consistent with the websites to cause the women to believe that they sought clothed models.  Only after the women initiated conversation with the Defendant or Pratt would the recruiters disclose that they were actually seeking women for pornographic videos.  At that point, many women demurred.

In an attempt to reel these women back in, Defendant directed other young women to contact the prospective models and falsely reassure them that the videos would not be posted on-line and that none of the women's friends, families, colleagues, or classmates would find out.  Young women were selected as references, because Pratt, Matthew Wolfe and Defendant believed that the victims were more likely to believe other young women over the Defendant or Pratt.  The references were paid a

2

fee for each victim they attempted to recruit, with additional compensation for victims who agreed to film a video.

Defendant and other members of the conspiracy took active steps to ensure that the victims did not find out that Defendant and the other members of the conspiracy operated GDP and GDT. Defendant knew that most of the young women they were recruiting would have never agreed to appear in a video if they knew that videos of their explicit sexual activity would be posted on the internet and marketed to their friends and family.

Most of the sex videos that were created as a part of the conspiracy were shot at hotels or short-term rental units in the San Diego area. If one of the women agreed to act in the pornographic video, Defendant and his co-conspirators promptly booked flights to San Diego within a day or two to limit the chances that the woman would change her mind. Once victims arrived at the hotel or short-term rental unit, Defendant continued to falsely assure the victims that the videos would not be posted on-line and that no one who knew the victims would see -or even know about- the video. Victims were told that the contracts that they were presented with simply said what the victims had already been told, including that the videos would not be posted on-line. Nowhere on the contract could the reader find a reference to girlsdoporn or girlsdotoys. The companies were instead identified with innocuous names, such as Bubblegum Casting. Victims were not provided a copy of the contracts that they signed.

Before some of the video shoots, victims were offered alcohol or marijuana. Victims who consumed alcohol or smoked marijuana were directed to make a recorded statement saying that they were not under

3

the influence of any drugs or alcohol, even though they had just smoked marijuana or drank alcohol.

As a part of the conspiracy, Defendant and others would at times coerce victims into completing the videos once they were underway. Defendant and other co-conspirators threatened to sue the victims, cancel flights home, and post the videos on-line, if the victims did not complete the sex videos. Hotel room doors were often blocked by camera and recording equipment, and the victims felt powerless and unable to leave.

Victims were also misled about how long the video shoots lasted. Most were told the video production would take around 30 minutes, when in reality, they typically lasted for several hours. The sex for the video shoots was rough and caused many victims pain, and in some cases bleeding. Some victims asked to stop filming. In response, Defendant and others told the victims that they had to keep going and finish the videos. Victims were also often paid significantly less than originally promised. Defendant and others would cite a tattoo, a mole, or some other perceived imperfection to pay the victim less.

Once the videos were posted on-line many victims contacted the Defendant and his co-Defendants, seeking to get their videos taken off the websites. Their calls were blocked or ignored.

//
//
//
//
//

## II. Sentencing Guidelines

The government recommends the following United States Sentencing Guidelines:

| | | |
|---|---|---:|
| 1. | Base Offense Level [§ 2G1.1] | 34 |
| 2. | Aggravating Role [§ 3B1.1] | +2 |
| 3. | Uncharged conduct (multiple victims) [5K2.21] | +3 |
| 4. | Acceptance of Responsibility [§ 3E1.1] | -3 |
| 5. | See sealed motion | <u>-3</u> |
| | Adjusted offense level: | 33 |

According to the Presentence Investigation Report, Defendant has three criminal history points and is therefore in Criminal History Category II. At Criminal History Category II, an offense level 33 corresponds to a sentence of 151 to 188 months in custody.

## III. Sentencing Recommendation

Consistent with the parties' plea agreement, and considering the 3553(a) factors, the government recommends a sentence of 151 months in custody. The nature and circumstances of the offense were, in a word, cruel. Over the course of approximately four years, Defendant lured one victim after another into his trap with fake modeling ads, aliases and deceptive front companies, false promises that everything would be okay, and, when necessary, threats and coercion.

Even after numerous victims told Defendant and his co-conspirators how their lives had been upended by their malicious scheme, Defendant simply moved on to the next victim without any regard for the well-being of anyone but himself. The crime was utterly callous in nature and there is no excuse or justification for his conduct, which was driven purely by greed. The harm inflicted by Defendant will last a

lifetime for his victims. The sentence must reflect the severity of this cruel scheme and be sufficient to deter anyone from running a similar scheme in the future. The government respectfully submits that a 151-month sentence will serve that purpose.

                                      Respectfully submitted,

                                      RANDY S. GROSSMAN
                                      Acting United States Attorney

                                      <u>/s/ Joseph S. Green</u>
                                      JOSEPH S. GREEN
                                      Assistant U.S. Attorney
                                      Attorneys for United States of America